# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **BARRY L. HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 13-2931-STA-cgc** |
| | ) | |
| **SHOE SHOW, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Shoe Show, Inc.'s Motion for Summary Judgment (ECF No. 19) filed on May 1, 2015. Plaintiff Barry L. Hill has responded in opposition, and Defendant has filed a reply brief.[1] For the reasons set forth below, Defendant's Motion is **DENIED**.

## BACKGROUND

### I. Factual Background

Plaintiff's Complaint alleges that Defendant discriminated against him on the basis of his race in violation of Title VII, 42 U.S.C. § 1981, and the Tennessee Human Rights Act.[2]

---

[1] Plaintiff filed what appears to be a truncated version of his brief (ECF No. 20) at 11:57 p.m. on June 2, 2015, the deadline for submitting his response under Local Rule 56.1(b). On the following day, Plaintiff filed two expanded versions of the brief. The result is that Plaintiff technically filed his final brief one day late. Plaintiff should have first sought leave of Court to amend his brief or better yet an extension of time to file the file completed brief. Despite these defects in Plaintiff's briefing, Defendant has not objected to Plaintiff's late filing. Therefore, the Court will accept the late-filed brief here.

[2] The Complaint also alleges that Defendant is liable to Plaintiff under the Fair Labor Standards Act for unpaid compensation. According to Defendant's memorandum in support of its Motion for Summary Judgment, Plaintiff has accepted Defendant's offer of judgment as to that claim.

Defendant now seeks summary judgment on each of Plaintiff's claims for relief. Defendant has prepared a statement of undisputed facts as required by Local Rule 56.1(a), to which Plaintiff has responded. For his part Plaintiff has asserted that additional facts are not in dispute, and Defendant has responded to Plaintiff's statement of additional facts. For purposes of summary judgment, the Court finds that the following material facts are not genuinely in dispute.

Defendant operates retail shoe stores throughout the country. (Def.'s Statement of Undisputed Fact ¶ 1.) Plaintiff was originally hired by David Bowser (white male), one of Defendant's district managers, as a store manager at Defendant's location on Summer Avenue in Memphis, Tennessee. (*Id.*) Plaintiff commenced his employment on March 12, 2012. (*Id.* ¶ 2.) Plaintiff voluntarily resigned his employment with Defendant without notice on March 17, 2012, less than one week after he started. (*Id.* ¶ 3.) Plaintiff cited the area of town and the fact that he thought shoes were being stolen from the store as the reasons for his resignation. (*Id.*) A few months later in July 2012, Plaintiff was shopping at Defendant's store in the Oak Court Mall in Memphis, when he was approached by David Bowser who happened to be at the store that day. (*Id.* ¶ 5.) Plaintiff testified that Bowser approached him and asked him whether he was interested in managing the store. (*Id.* ¶ 6.) Plaintiff had gone to the Oak Court store to shop, not to seek a job; Bowser brought up the management opportunity to Plaintiff. (*Id.* ¶ 7.) Plaintiff accepted Bowser's offer and started as the store manager in the Oak Court location on July 16, 2012. (*Id.* ¶ 8.)

In Defendant's stores, each employee is assigned a one-digit employee code at the outset of his or her employment. (*Id.* ¶ 11.) The code allows the employee to clock in and out of the

computer-based register. (*Id.*)  Each employee also records time on a timesheet. (*Id.* ¶ 13.)[3]  The timesheet is a green-bar piece of paper kept in the back of the store where the employee signs his or her name and enters the date and the number of hours worked. (*Id.* ¶ 14.)[4]  The handwritten timesheet is used to calculate employee hours for payroll purposes. (*Id.* ¶ 15.)[5]  A sign was posted in the back of the Oak Court store near the timesheet reading: "Notice, do not sign in/out for another employee, consequences = termination!!!"  (*Id.* ¶ 16.)[6]  Furthermore, the store's policy manual contained a section entitled "work schedules," which stated that all employees must sign in and out for themselves and that an employee may be terminated for signing in and out for someone else.  (*Id.* ¶ 18.)[7]  Plaintiff understood that the rules regarding clocking in or out for other employees applied to him as the store manager.  (*Id.* ¶ 17.)  For the week ending

---

[3] Plaintiff adds that he kept two timesheets, one for his personal use at his desk and one for employees to sign.  (Pl.'s Resp. to Def.'s Statement ¶ 13.)  Plaintiff also states that he is not certain whether the document attached as Exhibit 8 to Defendant's Motion is his desk timesheet or the timesheet signed by employees. (*Id.*)

[4] Plaintiff disputes this statement and reiterates his response to Defendant's previous statement about timesheets.  The Court finds that Plaintiff has not actually shown how a genuine dispute exists about the basic format of the timesheet or the procedure for employees to write in their times and sign the timesheet.  Therefore, the Court considers Defendant's statement to be undisputed for purposes of summary judgment.

[5] Just as with the previous statement of undisputed fact, Plaintiff disputes this statement and reiterates his response to Defendant's previous statement about timesheets.  The Court finds that Plaintiff has not actually shown how a genuine dispute exists about the purpose of the timesheet.  Therefore, the Court considers Defendant's statement to be undisputed for purposes of summary judgment.

[6] Defendant has actually included a document that purports to be the posted notice itself.

[7] Plaintiff disputes this fact and again reiterates his response to Defendant's previous statements about timesheets.  The Court finds that Plaintiff has not actually shown how the additional facts he asserts create a genuine dispute about the existence of a written policy prohibiting employees from clocking in or out for other employees.  Therefore, the Court considers Defendant's statement to be undisputed for purposes of summary judgment.

February 14, 2013, Plaintiff handwrote times worked by Taylor King, Amber Peters, Jamie Padden, and Cash Montesio on the sign-in sheet. (*Id.* ¶ 19.) These employees did not complete or sign the timesheet themselves. (*Id.*)

Plaintiff disputes Defendant's characterization of the timekeeping policy. According to Plaintiff, the posted notice did not address or apply to clocking in and out of the store computer system to perform managerial functions. (Pl.'s Resp. to Def.'s Statement ¶ 16.) Plaintiff has adduced a declaration from Rosalba Espinoza, a former store manager at one of Defendant's stores who worked under Boswer's supervision. Espinoza explains that a code was needed to carry out managerial functions such as inventory control, completing transfers, completing payroll, entering time, transmitting time and payroll to the home office, and keying in bank deposits. (Espinoza Decl. ¶ 4, ECF No. 22-1.)

In addition to the store manager, each of Defendant's stores is staffed with a keyholder, who operates much like an assistant manager, as well as one or more sales associates. (Def.'s Statement of Undisputed Facts ¶ 9.) Jamie Padden became a keyholder at the Oak Court store on February 1, 2013. (*Id.* ¶ 10.) Padden was assigned an employee code by Bowser on Padden's first day of employment. (*Id.* ¶ 12.) Padden's code allowed her to clock in on the computer-based register but did not enable her to perform managerial functions such as a completing a return of merchandise. (*Id.*)

On Monday, February 11, 2013, Bowser visited the Oak Court location. (*Id.* ¶ 20.) When Bowser arrived, he discovered that Jamie Padden was the only employee in the store. (*Id.* ¶ 21.) Defendant asserts that this was a scheduling error by Plaintiff because Padden had only

been on the job for a few days at that time and was too inexperienced to be the only employee in the store. (*Id.* ¶ 22.) Bowser also discovered that although Plaintiff was not in the store, Plaintiff was clocked in on the computer-based register as if he were present. (*Id.* ¶ 23.) When Bowser asked Padden if Plaintiff had been there, Padden responded that Plaintiff had not. (*Id.* ¶ 24.) According to Defendant, Padden stated to Bowser that Plaintiff had instructed her to clock him in. (*Id.*)

Plaintiff disputes these facts and contends that Bowser had given Plaintiff approval to take the day off and knew that Plaintiff would not be present at work on February 11, 2013. (Pl.'s Resp. to Def.'s Statement ¶ 22.) Plaintiff further claims that Bowser knew that in Plaintiff's absence, a keyholder would be running the store that day. (*Id.* ¶ 23.) As for Padden's preparation to take charge at the store, Padden had prior retail experience and had completed her mandatory training. (*Id.* ¶ 22.) Plaintiff had also advised Bowser that Padden needed a working keyholder's code because the code she had did not allow her to perform managerial functions. (*Id.* ¶ 23.) In fact, Bowser had instructed Plaintiff to allow other keyholders to use his code to perform managerial functions in the past. (*Id.* ¶¶ 16, 17, 23.)[8] Plaintiff denies that he ever instructed Padden to clock him in on February 11, 2013. (*Id*. ¶ 24.) If Padden clocked Plaintiff

---

[8] Plaintiff actually claims that Bowser had instructed Plaintiff and Espinoza to allow keyholders to use their manager codes to "clock in" and perform managerial functions. (Pl.'s Resp. to Def.'s Statement ¶¶ 16, 17, 23.) However, not all of the materials cited by Plaintiff substantiate his claim that Bowser directed Espinoza to share her code with other employees. One portion of Plaintiff's deposition testimony consists of a conversation between Plaintiff and Espinoza in which Espinoza allegedly told Plaintiff that Bowser had instructed her to share her manager code with employees. This proof constitutes inadmissible hearsay. And the cited portions of Espinoza's own deposition testimony and declaration do not show that Bowser instructed Espinoza to share her code, only that Espinoza did in fact share her code with employees. Notably, Espinoza did not testify that Bowser knew Espinoza was sharing her code.

in on February 11, 2013, she did so to use his manager code to perform managerial functions. (*Id.*)

When Plaintiff reported to work on Tuesday, February 12, 2013, Bowser asked him how Plaintiff had been clocked in the previous day. (Def.'s Statement of Undisputed Fact ¶ 25.) Plaintiff responded that he did not know. (*Id.*) At that point Bowser asked for Plaintiff's keys and terminated his employment. (*Id.*)[9] Bowser completed a separation report on which he marked the reason for Plaintiff's termination as "Violation of Company policy" and wrote in the "Remarks" section: "Barry is terminated for failure to follow or comply with established Company policies and procedures including clock-in/clock-out procedures." (*Id.* ¶ 26.)[10] Plaintiff adds that during a site visit one week prior to his termination, Bowser had complimented Plaintiff on the store only later to remark to Plaintiff, "Seriously, get your resume prepared." (Pl.'s Resp. to Def.'s Statement ¶ 26.)

Pursuant to Local Rule 56.1(b), Plaintiff has submitted a statement of the following additional facts. A keyholder or store manager can operate a store and perform necessary and required managerial functions, though the parties disagree over whether a keyholder can perform all of those functions. (Pl.'s Statement of Add'l Facts ¶ 27; Def.'s Resp. to Pl.'s Add'l Fact ¶

---

[9] Plaintiff disputes these statements but only reiterates his response to Defendant's previous statements about Padden using his code to clock him in on February 11, 2013. The Court finds that Plaintiff has not actually shown how a genuine dispute exists about the events of February 12, 2013. Therefore, the Court considers Defendant's statements about Plaintiff's termination to be undisputed for purposes of summary judgment.

[10] Plaintiff again disputes the statement about the separation report but only reiterates his response to Defendant's previous statements about Padden using his code to clock him in on February 11, 2013. The Court finds that Plaintiff has not actually shown how a genuine dispute exists about the contents of the separation report. Therefore, the Court considers Defendant's statements about Plaintiff's termination to be undisputed for purposes of summary judgment.

27.) Defendant never reprimanded or terminated Padden for using Plaintiff's code for clocking in and clocking out to perform managerial functions. (Pl.'s Statement of Add'l Facts ¶ 28.) Plaintiff was replaced with an individual who was not in Plaintiff's protected class, Troy Shrekengeist a white male. (*Id.* ¶ 29; Def.'s Resp. to Pl.'s Add'l Fact ¶ 29.) Defendant hired Skrekengeist to replace Plaintiff within two or three days of Plaintiff's termination. (Pl.'s Statement of Add'l Facts ¶ 37.)[11]

Plaintiff next asserts that once Plaintiff filed a charge of discrimination with the EEOC, Defendant responded to the charge and cited only Plaintiff's violation of the clocking in and clocking out policy as the cause for his termination. (*Id.* ¶ 33.)[12] With respect to the timesheets, Plaintiff asserts that he kept two timesheets, the official form signed by the employees and another for personal use at his desk. (*Id.* ¶ 35.) Defendant adds that the timesheet signed by employees was a predated timesheet each store manager was required to submit to payroll. (Def.'s Resp. to Pl.'s Add'l Fact ¶ 35.) Bowser discovered the predated timesheet with Plaintiff's handwriting on it, and Plaintiff testified this was the timesheet he would have submitted to payroll, had the employees signed it. (*Id.*) Bowser was not aware that Plaintiff kept two timesheets. (*Id.*)

---

[11] Plaintiff also asserts that Shrekengeist was a friend of Bowser. (Pl.'s Statement of Add'l Facts ¶ 37.) However, the evidence Plaintiff cites to support this claim is not admissible. Plaintiff has only his own deposition testimony, which consists of speculation and conjecture, and a deposition exhibit, which is handwritten and lacks authentication. Even if Plaintiff had admissible evidence to support his contention, the Court is not convinced that the purported fact is material to the issues presented at summary judgment.

[12] Plaintiff has cited for support the actual document submitted by Defendant to the EEOC as a position paper on Plaintiff's charge. Defendant argues that the document is inadmissible under 42 U.S.C. § 2000e-5(b). For reasons explained more fully below, the Court holds that the paper is admissible.

The parties have asserted a number of other facts, which the Court holds are not material to the issues presented at summary judgment. As such, the Court has not included this evidence in its recitation of the material facts for purposes of analyzing Defendant's Motion. The Court pauses to note this proof and the parties' disputes about it for the record. First, the parties dispute how Jamie Padden came to be a keyholder at Defendant's Oak Court store. According to Defendant, the Oak Court store's keyholder resigned, and Plaintiff hired Jamie Padden with whom he had worked at a previous job as the new keyholder at the Oak Court location. (*Id.*) According to Plaintiff, Bowser reassigned Terrence Pugh, an African American male and a keyholder at the Oak Court store, to Defendant's Summer Avenue store with the knowledge that the Summer Avenue store was closing, all to make room for Padden. (Pl.'s Resp. to Def.'s Statement of Fact ¶ 10; Pl.'s Statement of Add'l Facts ¶ 36.) In response Defendant contends that Bowser sent Fugh to the Summer Avenue store on a temporary basis and planned to bring Fugh back to the Oak Court store once the Summer Avenue store closed. (Def.'s Resp. to Pl.'s Add'l Fact ¶ 36.) When Fugh informed Bowser that he was looking for another job, Bowser considered that Fugh's resignation and did not schedule Fugh for any additional shifts. (*Id.*) Based on this record, the Court concludes that the circumstances surrounding Fugh's reassignment are disputed but largely irrelevant to the issues presented.

Second, Plaintiff asserts that Bowser instructed Espinoza to watch African-American and Latino customers more closely so that they would not steal merchandise. (Pl.'s Statement of Add'l Facts ¶ 30.) Defendant disputes the claim citing Espinoza's deposition testimony where she stated that Bowser treated everyone the same. (Def.'s Resp. to Pl.'s Add'l Fact ¶ 29.) Defendant's objection is noted; however, Espinoza's deposition testimony in context describes

how Bowser treated his subordinates and employees while Espinoza's declaration addresses how Bowser instructed her to scrutinize Defendant's minority customers. In any event the Court finds that this statement is immaterial to the question of whether Defendant discriminated against Plaintiff on the basis of his race.

Finally, Defendant cites Plaintiff's deposition testimony that during the week that Plaintiff was the store manager at the Summer Avenue location, Bowser told Plaintiff that he wanted Plaintiff to take Bowser's place when Bowser retired and that Plaintiff reminded Bowser of himself. (Def.'s Statement of Undisputed Fact ¶ 4.) Defendant argues that this and other proof tends to show that Bowser did not harbor any animus against Plaintiff due to his race. Defendant further argues that this proof supports a "same actor" inference. The Court considers Defendant's same actor argument fully below. At the summary judgment stage, the Court finds that Bowser's statements to Plaintiff are not material.

## II. Defendant's Evidentiary Objections

Defendant has raised two specific objections to documents cited by Plaintiff to support his fact contentions at summary judgment. Defendant objects to the admissibility of its written position statement addressed to the EEOC in response to Plaintiff's charge of discrimination. For support Defendant relies on 42 U.S.C. § 2000e-5(b), which states in relevant part that "[n]othing said or done during and as a part of such informal [conciliation] endeavors may be . . . used as evidence in a subsequent proceeding without the written consent of the persons concerned."[13] The same subparagraph outlines the administrative procedure for investigating a charge of discrimination. Once a complainant makes a charge of discrimination, the EEOC has

---

[13] 42 U.S.C. § 2000e-5(b).

120 days to make a reasonable cause determination about the charge. If it "determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."[14] The evidentiary prohibition contained in section 2000e-5(b) covers statements made during this informal "conference, conciliation, and persuasion" phase of the administrative proceedings. Courts construing section 2000e-5(b) have held that the prohibition on the use of these statements in a subsequent proceeding does not apply to position papers reciting one party's version of events.[15]

The Court holds that the statutory prohibition on which Defendant relies does not apply here. Defendant has not shown that it gave its written statement as part of the "conference, conciliation, and persuasive" phase of the administrative proceedings. Defendant has not shown that the EEOC had made a probable cause determination and progressed to the informal conciliation process at the time Defendant gave its statement, though the statement does refer to mediation. Perhaps more importantly, the statement is merely a recitation of Defendant's version of the facts and contains no proposals for informal conciliation that might imply an effort to reach a settlement with Plaintiff over his charge of discrimination.[16] Therefore, the Court concludes that section 2000e-5(b)'s exclusion of statements made during conciliation efforts

---

[14] *Id.*

[15] *E.g. Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992); *Brooks v. Grandma's House Day Care Ctrs., Inc.*, 227 F. Supp. 2d 1041, 1043 (E.D. Wis. 2002).

[16] *See also* Fed. R. Evid. 408(a)(1) ("Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim to impeach by a prior inconsistent statement or a contradiction: conduct or a statement made during compromise negotiations about the claim . . . .").

does not apply here.

Next, Defendant objects to the admissibility of findings made by the Tennessee Department of Labor and Workforce Development in the course of Plaintiff's application for unemployment benefits. Plaintiff claims that the state made a finding that Plaintiff had no control over Padden using Plaintiff's code to perform her job functions during Plaintiff's day off. Plaintiff has attached a copy of the Department's written opinion awarding him unemployment benefits. Defendant argues that the Department of Labor and Workforce Development's findings are not admissible under Tennessee law. Tenn. Code Ann. § 50-7-304(k) provides as follows: "No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts."[17] The Sixth Circuit has interpreted this statute to mean that TDOL decisions cannot be used in civil cases because they are the result of "quick and inexpensive hearings with different standards of proof than civil trials."[18] As a result, an unemployment hearing officer's decisions should not be admitted in an employment discrimination suit.[19] Based on this clear statutory authority, the Court concludes that the written findings of the Tennessee Department of Labor and Workforce

---

[17] Tenn. Code Ann. § 50-7-304(k).

[18] *Reed v. Intermodal Logistics Serv., LLC.*, No. 09-2607, 2011 WL 4565450, at *13-14 (W.D. Tenn. Sep. 29, 2011) (citing *Pascal v. Anchor Advances Prod., Inc.*, No. 96-5453, 1997 U.S. App. LEXIS 17732, at *14 (6th Cir. July 10, 1997)).

[19] *Id.*

Development are not admissible in the case at bar. Therefore, the Court declines to consider them as part of its summary judgment analysis.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[21] and the court "may not make credibility determinations or weigh the evidence."[22] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[23] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[24] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[25] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to

---

[20] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[22] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[23] *Celotex*, 477 U.S. at 324.

[24] *Matsushita*, 475 U.S. at 586.

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[26]  In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[27]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[28]

## ANALYSIS

Defendant seeks judgment as a matter of law as to all of Plaintiff's remaining claims for race discrimination.[29]  Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [his] race, color, religion, sex, or national origin."[30]  Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

---

[26] *Anderson*, 477 U.S. at 251–52.

[27] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[28] *Celotex*, 477 U.S. at 322.

[29] Plaintiff argues in his response brief that Defendant failed to move for summary judgment on Plaintiff's claim under 42 U.S.C. § 1981.  The Court finds that Defendant did, in fact, seek summary judgment on this claim in its opening brief.  Def.'s Mot. for Summ. J. 1, 2 (ECF No. 19) ("Plaintiff alleges that he was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Tennessee state law" and "Defendant moves for entry of an Order granting its Motion for Summary Judgment and dismissing Plaintiff's claims for relief in their entirety").

[30] 42 U.S.C. § 2000e–2(a)(1).

and conditions of the contractual relationship."[31]  The THRA makes it a "discriminatory practice for an employer to . . . discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin."[32]  Courts evaluate section 1981 and THRA claims of discrimination under the same analytical framework and federal case law that apply to Title VII claims.[33]  Thus, the Court's "analysis and conclusions concerning the Title VII claims apply equally to parallel claims brought under THRA" and section 1981.[34]

Where as here a plaintiff offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[35]  Plaintiff bears the initial burden to establish his *prima facie* case of discrimination by showing that (1) he is a member of a protected group, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was either replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees.[36]  Defendant argues that Plaintiff cannot carry this

---

[31] *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (other citations omitted).

[32] Tenn. Code Ann. § 4-21-401(a)(1).

[33] *Jackson v. Bd. of Educ. of Memphis City Sch. of Memphis, Tenn.*, 494 F. App'x 539, 543 n.1 (6th Cir. 2012) (citation omitted); Tenn. Code Ann. § 4-21-311(e) (codifying *McDonnell Douglas* burden shifting framework in THRA cases).

[34] *Jackson*, 543 F. App'x at 543 n.1.

[35] *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

[36] *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015).

initial burden because Plaintiff lacks proof as to two of the elements of his *prima facie* case. The Court disagrees.

Concerning Plaintiff's qualifications for the job, Defendant argues that Plaintiff was not otherwise qualified for the store manager position because he had violated company policy on timekeeping. Defendant's argument improperly conflates two different stages of the *McDonnell Douglas* burden-shifting framework. Defendant claims that Plaintiff was no longer qualified for his job because he had violated company policy, and at the same time Defendant claims that its legitimate reason for terminating Plaintiff was Plaintiff's violations of company policy. The Sixth Circuit has held that in anti-discrimination cases district courts should assess whether the plaintiff is "otherwise qualified" for his or her position at the *prima facie* stage without considering the employer's legitimate, nondiscriminatory reason for its adverse action against the plaintiff.[37] The Court of Appeals has explained that "[t]o do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."[38] Instead, for purposes of the plaintiff's *prima facie* showing, the Courts should only assess Plaintiff's qualifications "prior to

---

[37] *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) (applying rule in Title VII sex discrimination case); *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) ("Instead of using the discharge justification to judge whether Cicero was qualified at the prima facie stage [of his ADEA claim], the Court should only consider the employer's proffered reason in the later stages of the *McDonnell Douglas* analysis."); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 662-63 (6th Cir. 2000) (applying rule in pregnancy discrimination case).

[38] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*) (citing *Cline*, 206 F.3d at 660-61)).

and independent of the events that led to the adverse action."[39]   The Court finds then that Defendant's argument on this point is not persuasive.   Therefore, Defendant's Motion is denied as to this issue.

Defendant next argues that Plaintiff cannot prove that he was treated less favorably than an employee outside of his protected class.   The parties dispute whether Espinoza, Padden, or even Bowser received more favorable treatment than Plaintiff for engaging in similar violations of Defendant's timekeeping policies.   The Court need not resolve this issue because Plaintiff can also make out a *prima facie* case of race discrimination by showing that he was replaced by an employee outside of his protected class.   The undisputed fact at summary judgment is that Defendant replaced Plaintiff with a white male, Troy Shrekengeist.[40]   Under the circumstances Plaintiff need not also prove that another employee outside of his protected class received more favorable treatment from Defendant.   Therefore, Defendant's Motion is denied as to this issue.

Having held that Plaintiff can make out a *prima facie* case of race discrimination, the burden of production now shifts to Defendant to proffer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.   The Court finds no genuine dispute on this point. Defendant asserts that Plaintiff was terminated for two violations of the company's timekeeping policy: allowing Jamie Padden to use his code to clock him in and filling out timesheets for other

---

[39] *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (applying rule in pregnancy discrimination case) (citations omitted).  *See also Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 433 (6th Cir. 2012) (holding that "there can be no logical basis for requiring [an ADA plaintiff] to have a CDL to be 'otherwise qualified' for the position of training to obtain a CDL" where the plaintiff was hired as a school bus driver trainee but failed to obtain her commercial drivers license).

[40] *See also* Def.'s Answer ¶ 19 (ECF No. 10).

employees. While the parties disagree over whether Defendant's reasons were pretextual, they appear to agree that such reasons are legitimate, nondiscriminatory grounds for termination. The Court concludes then that Defendant has carried its burden on this point.

The burden now shifts back to Plaintiff to demonstrate by a preponderance of the evidence that Defendant's reasons are pretext for discrimination. Plaintiff can make this showing by proving one of the following: (1) Defendant's proffered reason has no basis in fact, (2) Defendant's proffered reason did not actually motivate the decision to terminate Plaintiff, or (3) Defendant's proffered reason was insufficient to motivate its decision.[41] Put another way, Plaintiff's burden "is to produce sufficient evidence from which a jury may reasonably reject the employer's explanation" and infer discrimination.[42] Even then summary judgment for the defendant may be appropriate "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."[43]

The Court holds that triable questions of fact remain about Defendant's reasons for terminating Plaintiff's employment. With respect to Plaintiff's sharing his code with Padden, a genuine dispute exists over whether Padden's use of the code was sufficient cause for Plaintiff's termination. First and foremost, Plaintiff testified during his deposition that he had shared his

---

[41] *Martinez*, 703 F.3d at 915.

[42] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012).

[43] *Griffin v. Finkbeiner*, 689 F.3d 584, 593-94 (6th Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

manager's code with other keyholders at the store during their training.[44]  According to Plaintiff, he gave these employees his code at Bowser's direction and only until Bowser "could fix it," presumably by setting up the new keyholder with his or her own code.[45]  Other evidence shows that Padden, who was hired as a new keyholder at the Oak Court store only 10 days prior to Plaintiff's termination, did not yet have her own code and that Bowser was aware Padden needed her own code.  Plaintiff testified at his deposition that Padden had asked him on more than one occasion when she would get a code of her own, and Plaintiff responded that he was trying to address the situation with Bowser.[46]  Perhaps most importantly, Plaintiff testified that Bowser gave him the day off on February 11, 2013, and therefore knew that Plaintiff would not be in the store that day.  Viewing this proof in the light most favorable to Plaintiff, a reasonable juror could conclude that Bowser had authorized Plaintiff to share his manager's code with new keyholders in the past, that Plaintiff had to share his code with Padden during her initial training, and that in Plaintiff's absence on February 11, 2013, and without her own code, Padden would need to use Plaintiff's code to perform managerial functions.  Under the circumstances, reasonable minds could differ over whether Defendant was justified in firing Plaintiff for sharing his code with Padden.

Defendant has adduced proof from Bowser, showing that Padden reported to him

---

[44] Hill Dep. 164:11-24, Dec. 11, 2014 (ECF No. 22-2).

[45] *Id.* at 164:11-15.

[46] *Id.* at 175:3-14.  Plaintiff did not directly testify that he followed through and went to Bowser to remind him to set up Padden's code.  Even so, giving Plaintiff the benefit of every reasonable inference as the Court must do at summary judgment, this testimony if accepted as true shows that Bowser knew before February 11, 2013, that Padden needed her own code to perform managerial functions at the store.

Plaintiff had instructed her to clock him in on February 11, 2013. Defendant argues that Plaintiff's instructions to Padden violated the company's policy prohibiting employees from clocking in or clocking out for another employee.[47] It is not clear to the Court what motive Plaintiff would have had to instruct Padden to clock him in. The same handwritten timesheet found by Bowser on Plaintiff's desk showed that on Monday, February 11, 2013, Plaintiff had written in the word "off" for his time that day. It seems to be undisputed that the handwritten timesheet, not the computer clock in with Plaintiff's code, was the official record for company payroll. The fact then that the actual record used to calculate payroll reflected that Plaintiff was off on February 11, 2013, cuts against any inference that Plaintiff had directed Padden to clock him in on that day for some improper purpose. And for the reasons already explained, a genuine question exists over whether Plaintiff instructed Padden to use his code that day only to perform managerial functions in his absence.

Turning to the timesheet issue, the Court also holds that genuine questions of fact remain about whether Defendant had legitimate cause to terminate Plaintiff's employment over filling out the timesheet for other employees. Bowser states in the first of his summary judgment declarations that on February 11, 2013, he visited the store and discovered the official timesheet

---

[47] Elsewhere in its briefing, Defendant seems to argue that Plaintiff violated company policy not only by sharing his manager's code with Padden but by allowing her to use it while he was not present in the store. *E.g.* Def.'s Reply Br. 8 (ECF No. 25) ("As for allowing the use of his code, Plaintiff testified that Bowser knew that Amber Peters and Terrence Fugh had operated the computer after Plaintiff had entered his own code and while Plaintiff was present in the store – but not that Bowser knew that Plaintiff had given them the passcode to clock him in when he was not there."); *id.* at 10 ("Bowser certainly did not know that Plaintiff had provided Padden his confidential passcode to use while Plaintiff was not present."). Viewing the evidence in the light most favorable to Plaintiff, a genuine dispute exists over whether Bowser decided to terminate Plaintiff only for sharing his code with Padden or whether Bowser terminated Plaintiff for allowing her to use the code while also being absent from the store.

blank, only to return to the store the next day and find it with time entries completed, all in the same handwriting.[48] Defendant asserts that Plaintiff's filling out the timesheet for other employees constituted a violation of its policy against one employee clocking in or clocking out for another employee. But Plaintiff testified during his deposition that Bowser had once completed a timesheet for store employees and then had the employees initial the entries.[49] In her declaration, Espinoza states that she also witnessed Bowser complete employee timesheets and that Bowser was aware of Espinoza sometimes filling in timesheets for employees who were unable to complete a timesheet.[50] Viewing this proof in the light most favorable to Plaintiff, a reasonable juror could find that Plaintiff's timekeeping was substantially the same as Bowser's or Espinoza's. As such, the timesheet issue was not sufficient to warrant Plaintiff's termination.

While not disputing that Bowser or Espinoza may have completed timesheets, Defendant argues in its reply brief that Plaintiff's conduct was distinguishable from any conduct of Bowser or Espinoza. First, Defendant argues that even if Bowser filled in a timesheet as Plaintiff claims, Bowser still required the employees to sign their own names on the completed timesheet. Be that as it may, there is no evidence that Plaintiff wrote in employee signatures or initials or that Plaintiff did not require his employees to sign their own name or initials on the February 2013 timesheet. In fact, the timesheet attached as Exhibit 8 to Defendant's summary judgment brief

---

[48] Bowser Decl. ¶¶ 14, 15, ex. A to Def.'s Mem. in Support (ECF No. 19-6).

[49] Hill Dep. 184:17-185:6. Plaintiff went on to testify that Espinoza also completed timesheets for employees who had recently quit so that the employees would receive a final paycheck. This portion of Plaintiff's testimony appears to be inadmissible hearsay. Even so, Espinoza has offered much the same proof in her own declaration. As such, the Court need not consider this portion of Plaintiff's deposition testimony to substantiate his claim that Espinoza also filled out timesheets for other employees.

[50] Espinoza Decl. ¶ 6.

does not contain any employee signatures, and the only initials on the timesheet are those of Plaintiff and one other employee.[51] In short, there is no proof that Plaintiff did anything Bowser himself had not done on a previous occasion by filling in time entries for employees.

As for Espinoza, Defendant argues that her declaration only shows that she completed timesheets for employees who were unable to do so themselves, i.e. employees who were no longer working for Defendant. Defendant's interpretation of Espinoza's testimony appears to be correct. However, the issue presented is whether Defendant disciplined Plaintiff for engaging in conduct substantially similar to Espinoza's. Defendant's stated reason for terminating Plaintiff was simply the fact that he had violated the company's bright-line rule prohibiting one employee from clocking in or clocking out for another employee. Or as Defendant states in its opening brief, "Shoe Show has timekeeping policies that uniformly apply to its employees."[52] Plaintiff has challenged that explanation by showing that Bowser, the same decisionmaker who fired Plaintiff for writing in time entries, was aware that Espinoza also wrote in time entries for employees, arguably in violation of the letter of the company policy, but never received discipline for it. Defendant cannot have it both ways, arguing that Bowser legitimately enforced a zero tolerance timekeeping policy against Plaintiff but then made an exception when Espinoza violated the same policy. Therefore, the Court rejects Defendant's arguments distinguishing Plaintiff's purported timekeeping infraction.

---

[51] There is no evidence before the Court that Plaintiff wrote in the initials of the other employee. The Court would note that the handwriting for each set of initials appears to be different, though the Court is not well-situated here to make an assessment to the handwriting. In the final analysis, this appears to be a fact question for a jury.

[52] Def.'s Mem. in Support 7 (ECF No. 19-1).

Defendant argues that even if Plaintiff could create an issue of fact at the pretext stage, Defendant is nevertheless entitled to judgment as a matter of law under the honest belief rule. The Sixth Circuit's honest belief rule entitles an employer to "summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless."[53] An employer's investigation of misconduct "need not be perfect in order to pass muster under the rule."[54]  In fact, the employer is not required to interview the employee or some or all of his witnesses.[55]  "The key inquiry is instead whether the employer made a reasonably informed and considered decision before taking an adverse employment action."[56] In order to rebut the employer's reliance on the rule, the plaintiff must come forward with proof of "an error on the part of the employer that is too obvious to be unintentional."[57]

The Court holds that triable issues preclude the application of the honest belief rule at summary judgment in this case.[58]  The "determinative question" is not whether Plaintiff actually violated the company's clock in policy but whether Bowser "reasonably and honestly believed

---

[53] *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590-91 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.,* 580 F.3d 394, 401 (6th Cir. 2009)).

[54] *Id.* at 591 (citation omitted).

[55] *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012).

[56] *Loyd*, 766 F.3d at 591.

[57] *Id.*

[58] While the Sixth Circuit has never squarely addressed the issue, in at least one reported decision, it has treated the honest belief rule as a question of fact for the jury unless, of course, the proof is undisputed.  *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 414 (6th Cir. 2008) ("Plaintiff has produced sufficient evidence to place at issue whether Dr. Kabour made a reasonably informed and considered decision before terminating her. In addition, to the extent the racial slur was a factor in plaintiff's firing, there is a material issue whether a reasonable and informed decision was made.").

that he did."[59]    According to Defendant, Bowser had a good faith belief that Plaintiff had instructed Padden to clock him in on February 11, 2013.  For the reasons already explained, a factual dispute exists about (1) whether Bowser had allowed Plaintiff to share his manager's code with new keyholders in the past, (2) whether Plaintiff had to disclose his code to Padden during her training, (3) whether Bowser gave Plaintiff the day off on February 11, 2013, knowing that Padden would need to use Plaintiff's code, and (4) whether Plaintiff's violation of the timekeeping policy was substantially similar to apparent violations Bowser and Espinoza had committed in the past.  Viewing the evidence in the light most favorable to Plaintiff, a jury could find that Bowser did not reasonably and honestly believe Plaintiff had violated the company's timekeeping policy.    Therefore, summary judgment under the honest belief rule is not appropriate.

Finally, Defendant argues that it is entitled to summary judgment based on the same actor inference.  The Sixth Circuit recognizes the same actor inference "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee."[60]  Importantly, the same actor inference is a permissive inference, meaning that the finder of fact may draw the inference but is not required to do so.[61]  In this case the fact that Bowser recruited and hired Plaintiff for the job and then seven months later fired Plaintiff merely gives rise to an inference of non-discrimination, an inference a jury can weigh in deciding the

---

[59] *Seeger*, 681 F.3d at 286.

[60] *Wexler*, 317 F.3d at 572-73 (citing *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461 (6th Cir. 1995)).

[61] *Wexler*, 317 F.3d at 573.

merits of Plaintiff's claims. Likewise, the evidence about the number of African-Americans hired by Bowser as store managers or Bowser's instructions to scrutinize minority customers more closely does not dictate judgment as a matter of law in either party's favor. It bears emphasis that at summary judgment the Court must draw all inferences in favor of the non-moving party.[62] The Court concludes then that the same actor inference does not alter its summary judgment analysis.

## CONCLUSION

The Court holds that genuine issues of material fact remain for trial in this case. Therefore, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 27, 2015.

---

[62] *Id.* ("We therefore reject the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual.").